## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**ROY D. EDDY**                                                                                    **PLAINTIFF**

**VERSUS**                                       **CIVIL ACTION NO. 1:22-cv-00119-RPM**

**A. REYNOLDS, et al.**                                                              **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER OF DISMISSAL

Plaintiff Roy D. Eddy, proceeding *pro se* and *in forma pauperis*, filed this civil action under 42 U.S.C. § 1983 on May 16, 2022. [1] at 3. When he filed his Complaint, Eddy was housed at the Central Mississippi Correctional Facility in Pearl, Mississippi, [1-2] at 1, but the events giving rise to this lawsuit occurred at the Jackson County Adult Detention Center ("JCADC") in Pascagoula, Mississippi, [1] at 2-4. Eddy names Nurse A. Reynolds and R. Nash as Defendants. [18] at 1; [46] at 2. The Court held an Omnibus Hearing[1] on April 10, 2023, and Defendants filed a Motion [63] for Summary Judgment on January 8, 2024—to which Eddy has not responded. For the following reasons, the Court finds that Defendants' Motion [63] for Summary Judgment should be granted, Eddy's claims against them should be dismissed, and this case should be closed.

### I.    BACKGROUND

#### A.  Eddy's Account of Events

Eddy submitted various documentary exhibits in support of his pleadings, and his testimony at the omnibus hearing is "competent summary judgment evidence." *See Evans v. Miss.*, 2:11-cv-00002, 2012 WL 4480731, at *4 n.3 (S.D. Miss. Sept. 26, 2012). Eddy was housed at JCADC from February 2022 to April 2022 as "a state prisoner." [49] at 32; *see also* [1] at 4

---

[1] *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a "more definite statement") (quotation omitted), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989).

(identifying himself as a "[c]onvicted and sentenced state prisoner" when the Complaint was filed). During that time, Eddy claims that he was denied adequate medical care for various ailments, including (1) a broken tooth, (2) an injury to his ribs, and (3) back and shoulder pain.

*First*, Eddy requested "to see [a] dentist" for a broken tooth on February 16, 2022. [1-1] at 1. When he learned that he would be charged $10.00 "for [a] sick call and meds," he requested an appointment anyway. *Id*. Eddy claims that he received "no response," and his request for an appointment was ignored. *Id*. Eddy testified that he finally received treatment for his broken tooth some 140 days later, once he was transferred to the Mississippi State Penitentiary ("MSP") in Parchman, Mississippi. [49] at 12-13. That treatment included a round of antibiotics before his medical providers "pulled" the broken tooth. *Id*. at 14; *see also* [10] at 2-3. Eddy testified that he did not file an administrative grievance at JCADC about his broken tooth because he was "told [that he] wasn't in jail long enough to file a grievance" at the time. [49] at 14.

*Second*, on February 21, 2022, Eddy "complain[ed] that [he] fell and hurt [his] ribs." [1-1] at 1. Because of this injury, he found it "hard to breath[e]." *Id*. He was again advised that it would cost $10.00 "for [a] sick call." *Id*. Eddy claims that he received this response "ten days later," so "he had no idea that the defendants replied" and "was never seen by medical concerning [this] request." [16] at 2. By the time he received the response, Eddy's ribs were no longer hurting, and he "was back to breathing normal[ly]." [49] at 23. Eddy conceded at the omnibus hearing that the injury to his ribs "[t]urned out not to be" serious. *Id*. at 29. He also conceded at the omnibus hearing that he did not file an administrative grievance at JCADC about the injury to his ribs. *Id*. at 24.

*Third*, Eddy claims that he "started feeling pain" in his left shoulder on March 6, 2022, because he had been "sleeping on an improper mat" while housed at JCADC. [1] at 4-5 (quotations

omitted); [49] at 9-10. Eddy says that "basically sleeping on steel" had "caus[ed] a blood vessel to be pinched." [1] at 5. Eventually, "two of [his] fingers [went] . . . numb" as a result. *Id*. Attached to Eddy's Complaint are three statements from fellow inmates, who witnessed Eddy's frequent complaints about a pinched nerve and noticed a bluish spot on the palm of his hand. [1-1] at 5-7.

Eddy claims that he asked to see a doctor about his back and shoulder pain[2] on March 8, 2022. *Id*. at 1. Yet again, Eddy was informed that he needed $10.00 to make an appointment with medical, and he was not seen by a physician during this time. *Id*. at 1-2. Eddy testified that he finally received treatment for his injured shoulder once he arrived at MSP, and that treatment consisted of "muscle relaxers, a muscle rub, and a bungee-like strap to work out with." [49] at 16; *see also* [10] at 1-2. Providers at MSP diagnosed Eddy with arthritis, and he testified that he is no longer receiving treatment for the shoulder injury. [49] at 17.

Eddy claims that he filed a grievance at JCADC about his injured shoulder on April 18, 2022, because his "ailment [was] getting worse." [1-1] at 1-2; *see also* [49] at 18. Eddy received a grievance response the same day, advising that he had previously "said no . . . on the request to see medical on [his] back." [1-1] at 2. Eddy insists that he never refused medical treatment at JCADC. [1] at 7; [16] at 3-4.

Eddy also filed a grievance with the Mississippi Department of Corrections ("MDOC") Administrative Remedy Program ("ARP") about his injured shoulder, and he received a first-step response on August 26, 2022. [22-1] at 1-2; [49] at 20-21. According to MDOC's response: "There is a $10.00 charge for sick call with VitalCore. If the inmate has no funds in their account, the sick

---

[2] Eddy also requested an appointment for his "back problems" on February 18, 2022. [1-1] at 1. At the omnibus hearing, Eddy testified that "the back issue and the shoulder issue [are] one and the same." [49] at 30; *see also* [49] at 22.

call charge will be deducted from any future deposit. The inmate is seen by medical staff regardless of their ability to pay." [22-1] at 2. Eddy never paid the $10.00 co-payment at JCADC, but the $10.00 co-payments were "deducted from [his] accounts" at MSP for the medical treatment he received there. [49] at 33.

Eddy testified that he has "never seen" Reynolds or Nash and only sued them for "answering [him] on the kiosk." *Id*. at 7. Eddy asks the Court to award $8,000.00 "for pain and suffering," plus the cost of his medical care and the cost of prosecuting this lawsuit. [1] at 5. He also requests that Defendants "be further trained in whatever field necessary to keep this from happening to anyone else." *Id*.

**B. Defendants' Summary Judgment Evidence**

In support of their Motion [63] for Summary Judgment, Defendants submitted additional evidence, including: (1) the declaration of Nurse Kelly Adamson, [63-5] at 1-3; (2) excerpts of Eddy's medical records and kiosk records, [63-1] at 1-4; (3) excerpts of MDOC's Inmate Handbook governing the ARP, [63-3] at 1-2; and (4) excerpts of JCADC's Inmate Handbook governing the grievance procedure, [63-4] at 3-5.

Nurse Adamson is the Health Service Administrator employed by VitalCore Health Strategies, which provides "medical services to inmates at JCADC." [63-5] at 1. Nurse Adamson reviewed Eddy's kiosk records and medical records and provided the following summary:

> On February 16, 2022, Eddy submitted a sick call request through the kiosk system asking to see a dentist or medical provider for a broken tooth. Nurse Reynolds responded that same day that there would be a ten-dollar charge for a sick call and medication and asked if Eddy would like to be scheduled. He initially responded asking that she set up an appointment, but later that same day he sent another communication asking for the sick call request to be disregarded. In accordance with his request, no appointment was scheduled, and the sick call request was closed. The kiosk records reflect that Eddy made no further requests for care related

to the broken tooth.

. . .

On February 21, 2022, Eddy submitted a sick call request appearing to report that he had fallen and injured his ribs. On March 3, 2022, Nurse Nash responded, reminding Eddy of the ten-dollar charge and telling him to let medical know if he wanted to incur that charge and be scheduled for an appointment. The kiosk records reflect that Eddy made no requests for care related to his alleged rib injury after Nurse Nash's March 3, 2022 response. On March 7, 2022, the sick call request was closed because Eddy had not accepted the charge and requested to be scheduled.

. . .

On March 8, 2022, Eddy submitted a sick call request stating that he needed to see a doctor because of a pain radiating from his back to the back of his arm. The response on March 13 again noted the ten-dollar charge and asked if Eddy wanted to be scheduled for a sick call. As of March 17, Eddy had not requested to be scheduled, so the sick call request was closed.

[63-5] at 1-2. Eddy's kiosk records confirm this account. [63-1] at 1-4.

During his time at JCADC, Eddy also complained about missing meals, suffering physical abuse at the hands of correctional staff, and suffering two head injuries as a result of falling. [63-1] at 1-4.  These latter allegations are not at issue here. [49] at 8-9 (testifying that his lawsuit arises from the sick calls described above in Section I(A)).

## II.    STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "On a motion

for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant probative' evidence." *Id.* (quoting *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)). "Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Amerson v. Pike Cnty., Miss.*, No. 3:08-cv-00053-DPJ-FKB, 2012 WL 968058, at *1 (S.D. Miss. Mar. 21, 2012). Factual controversies are resolved in the nonmovant's favor "only when both parties have submitted evidence of contradictory facts." *Id.* (quotation and ellipsis omitted).

## III.   DISCUSSION

Eddy's three claims will be dismissed for two reasons each. To start, Eddy failed to exhaust his administrative remedies with respect to all three claims. He admits that he failed to file an administrative grievance about his broken tooth and his injured ribs, and he failed to complete the

administrative-grievance procedure about his back and shoulder pain before filing this lawsuit. On the merits, Eddy has failed to establish the existence of a constitutional violation.

### A. Eddy's claims should be dismissed without prejudice for his failure to exhaust administrative remedies.

#### i. Legal Standard

Exhaustion of administrative remedies through the prison grievance system is a prerequisite for lawsuits filed under § 1983. *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001); *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

"Exhaustion is mandatory for 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). The Fifth Circuit Court of Appeals takes a "strict approach" to the exhaustion requirement. *Flores v. Lappin*, 580 F. App'x 248, 249 (5th Cir. 2014) (quotation omitted). "Under this strict approach, mere substantial compliance with administrative remedy procedures does not satisfy exhaustion; instead, prisoners must exhaust available remedies properly." *Id.* (quotations omitted).

Dismissal is mandatory where an inmate has failed to properly exhaust the applicable

administrative grievance procedure before filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 83-84. "Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement." *Evans v. Harrison Cnty. Adult Det. Ctr.*, No. 1:18-cv-00087-RHW, 2020 WL 980149, at *1 (S.D. Miss. Feb. 28, 2020). Instead, "[t]he grievance process must be carried through to its conclusion before suit can be filed under the Prison Litigation Reform Act." *Id.*

A properly exhausted claim has "complete[d] the administrative review process in accordance with the applicable procedural rules." *Woodford*, 548 U.S. at 88. Those rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*; *see also Woodford*, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

"The exhaustion requirement hinges on the availability of administrative remedies." *Pettis v. Hall*, No. 1:19-cv-00127-RPM, 2021 WL 785096, at *1 (S.D Miss. Mar. 1, 2021) (quotation and brackets omitted). "An inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* "A

convicted MDOC inmate housed at JCADC has available to him—and must exhaust—both JCADC's grievance procedure and MDOC's [ARP]." *Hanshaw v. Jackson Cnty.*, No. 1:21-cv-00111-BWR, 2023 WL 138043, at *3 (S.D. Miss. Jan. 9, 2023); *see also Tomlin v. Jackson Cnty.*, No. 1:16-cv-00062-RHW, 2017 WL 1201756, at *3 (S.D. Miss. Mar. 21, 2017).

### ii. Analysis

According to JCADC's Inmate Handbook, "[i]nmates may file a grievance when subject to a criminal act by another inmate, a prohibited act by a staff member, abuse or harassment, a violation of civil rights, or denial of common privileges without just cause." [63-4] at 4. "Inmates should file these grievances by using the inmate request system," and "[t]he form should clearly describe the problem and include a detailed account of the circumstances which led to the grievance." *Id*.

"Inmates who have been sentenced to [MDOC] also have access to the [ARP]." *Id*. MDOC's ARP requires an inmate to complete two steps before filing a lawsuit about the conditions of his incarceration. [63-3] at 1-2. First, an inmate must submit a written grievance clearly labeled, "this is a request for administrative remedy." *Id*. at 1. The first-step request must "present as many facts as possible to answer all the questions . . . concerning the incident." *Id*. If an inmate is dissatisfied with the first-step response, he may continue to the second step by submitting a written explanation "for [his] dissatisfaction with the previous response." *Id*. If an inmate is dissatisfied with the second-step response, only then may he file suit in federal court. *Id*.; *see also Tomlin*, 2017 WL 1201756, at *3 (explaining MDOC's two-step ARP).

The record evidence demonstrates that Eddy failed to exhaust his administrative remedies with respect to all three of his claims. *First*, Eddy testified that he did not file an administrative

grievance at JCADC about his broken tooth because he was "told [that he] wasn't in jail long enough to file a grievance" when the need arose. [49] at 14. Courts recognize an exception to the exhaustion requirement where "administrative remedies are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be patently futile." *Badger v. Fisher*, No. 5:16-cv-00107-MTP, 2017 WL 5906045, at \*2 (S.D. Miss. Nov. 30, 2017). "Grievance procedures are unavailable to an inmate if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process." *Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015) (emphasis omitted). "Exceptions to the exhaustion requirement only apply in extraordinary circumstances, and the prisoner bears the burden of demonstrating the . . . unavailability of administrative review." *Badger*, 2017 WL 5906045, at \*2 (quotation omitted).

Record evidence (including his own) undercuts Eddy's claim that administrative remedies were unavailable to him when he broke his tooth at JCADC. According to JCADC's administrative-grievance procedure, "the kiosks are . . . used by inmates when requesting services, directing questions, making inquiries, seeking assistance, or filing a grievance." [63-4] at 5. Eddy filed many sick calls using the kiosk during his time at JCADC, [63-1] at 2-4, showing that he had access to the kiosk and knew how to use it. And, by his own admission, Eddy filed an unrelated administrative grievance at JCADC a mere two months after requesting treatment for his broken tooth. [1-1] at 2. Because JCADC's administrative-grievance procedure places no temporal limitation on the filing of grievances, [63-4] at 3-5, Eddy could have grieved his broken tooth toward the end of April 2022—even if he thought administrative remedies were unavailable to him two months before.

10

The uncontested evidence thus shows that administrative remedies were available to Eddy by the end of his time at JCADC. He has failed to carry his burden of proving an exception to the exhaustion requirement. *See Quick v. Hodge*, No. 2:16-cv-00167-KS-MTP, 2018 WL 842197, at *4 (S.D. Miss. Jan. 22, 2018) (rejecting the argument that administrative remedies were unavailable where the plaintiff was "made aware of the [grievance  program and its procedures when [he was] processed into the jail"), *report and recommendation adopted by*, 2018 WL 834943, at *1 (S.D. Miss. Feb. 12, 2018); *Ramirez v. Bureau of Prisons*, No. 3:16-cv-00626-HTW-LRA, 2017 WL 3135934, at *3-4 (S.D. Miss. May 31, 2017) (rejecting the argument that administrative remedies were unavailable where the plaintiff had filed other grievances while in custody), *report and recommendation adopted by*, 2017 WL 3132068, at *1 (S.D. Miss. July 21, 2017).

*Second*, Eddy testified at the omnibus hearing that he did not file an administrative grievance whatsoever about the injury to his ribs. [49] at 24. *Third*, he did not complete the grievance process with respect to his back and shoulder pain before filing this lawsuit. [49] at 20. Eddy filed a grievance at JCADC about his back and shoulder pain on April 18, 2022, and he received a response the same day. [1-1] at 1-2; *see also* [49] at 18. Assuming that was sufficient to exhaust his administrative remedies at JACDC, Eddy was also required to exhaust MDOC's ARP before filing this lawsuit.  Though his initial grievance directed at MDOC is not part of this record, the documentary evidence that Eddy submitted shows that he only received a first-step response from MDOC officials on August 26, 2022, [22-1] at 1-5; *see also* [49] at 20—more than three months after filing this Complaint. It thus follows that MDOC's grievance procedure was not *complete* with respect to Eddy's back and shoulder pain at the time this lawsuit was filed.

Eddy has adduced no documentary evidence to show that he in fact exhausted his

11

administrative remedies with respect to these claims before filing this lawsuit. Thus, Eddy has not carried his burden as non-movant of "go[ing] beyond the pleadings and designat[ing] specific facts showing that there is a genuine issue for trial" on this point. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Because "[p]re-filing exhaustion is mandatory," *Gonzalez*, 702 F.3d at 788, but was not achieved in this case, Eddy's claims must be dismissed without prejudice for failure to exhaust administrative remedies.

**B. Eddy's claims should be dismissed with prejudice for his failure to establish a constitutional violation.**

### *i. Legal Standard*

"The denial or delay of medical treatment for serious medical needs violates the Eighth Amendment, which prohibits cruel and unusual punishment." *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). "To show a violation of the Eighth Amendment, the plaintiff must prove: (1) objective exposure to a substantial risk of serious harm; and (2) that prison officials acted or failed to act with deliberate indifference to that risk." *Carlucci*, 894 F.3d at 538 (quotation omitted). "Further, [a] delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Deliberate indifference "equates to the 'unnecessary and wanton infliction of pain,'" *Carlucci*, 984 F.3d at 538 (quoting *Gregg v. Ga.*, 428 U.S. 153, 173 (1976)), and "is an extremely high standard to meet," *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). To meet this standard, a plaintiff must show that prison officials "refused to treat him,

ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. (quotation omitted). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 459 (5th Cir. 2001). Nor can deliberate indifference "be proven through cumulative group acts, but, rather, 'each defendant's subjective deliberate indifference, *vel non*, must be examined separately.'" *Washington v. Yvette*, No. 6:09-cv-01432, 2010 WL 1418590, at *4 (W.D. La. Mar. 17, 2010) (quoting *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999)), *report and recommendation adopted by*, 2010 WL 1407198, at *1 (W.D. La. Apr. 6, 2010)

### ii. Analysis

Eddy has failed to establish an Eighth Amendment violation with respect to any of his alleged injuries. *First*, Eddy alleges that he received "no medical [care] and no response" to the sick-call request about his broken tooth. [1-1] at 1. Kiosk records reflect otherwise. Eddy first complained about his broken tooth on February 16, 2022, at 11:51 a.m. [63-1] at 2. At 12:46 p.m., Reynolds advised Eddy about the $10.00 charge for medical services and asked if he would like an appointment. *Id*. At 4:10 p.m., Eddy asked to schedule an appointment, but he withdrew his request about 25 minutes later—asserting that he is "a state inmate and should not be charged for medical purposes." *Id*. at 2-3. He further advised that he would "seek [a] legal remedy [instead]," so his request was closed at 5:09 p.m. *Id*. "While it [is] clearly within [Eddy's] rights to refuse medical treatment, he has no right to refuse treatment and then claim deliberate indifference to his medical condition." *McNeil v. Singh*, No. 1:12-cv-01005-RRB, 2013 WL 1876127, at *19 n.59 (E.D. Cal. May 3, 2013); *see also Zatko v. Rowland*, 835 F. Supp. 1174, 1178 (N.D. Cal. 1993)

(dismissing claim for denial of medical care as frivolous where the plaintiff "refused the necessary treatments"). On this evidence, it cannot be said that Reynolds "refused to treat" Eddy or otherwise "ignored his complaints," refuting his claim that she was deliberately indifferent to his medical needs. *See Domino*, 239 F.3d at 756.

*Second*, Eddy claims that he "was never seen by medical concerning" the injury to his ribs. [16] at 2. Kiosk records show that Eddy first advised his custodians about this condition on February 21, 2022, at 11:29 a.m. [63-1] at 3. On March 3, 2022, at 4:58 p.m., Nash advised Eddy that he would incur at $10.00 charge "to be seen in clinic by medical" and instructed him to accept the charge in order to be scheduled. *Id*. Eddy failed to reply, and the request was closed four days later. *Id*. Again, the evidence shows that Nash responded to Eddy's request for care, refuting any claim that he was "ignored." *See Domino*, 239 F.3d at 756.

Eddy seems to argue that Nash's ten-day delay in responding to his request amounts to constitutional injury. [49] at 23-24. But he conceded at the omnibus hearing that, by the time of Nash's response, his "ribs [were not] hurting," and he "was back to breathing normal[ly]." *Id*. at 23. He went on to admit that the injury to his ribs "[t]urned out not to be" serious. *Id*. at 29. Thus, Eddy "has not suffered, or even alleged that he suffered, any permanent or life-long impairment, which is a prerequisite for a claim of delay in the provision of medical treatment to an inmate plaintiff under § 1983." *Scott v. Forrest Cnty., Miss.*, No. 2:19-cv-00166-TBM-MTP, 2022 WL 4088765, at *3 (S.D. Miss. June 24, 2022) (quotation omitted), *report and recommendation adopted by*, 2022 WL 4088184, at *1 (S.D. Miss. Sept. 6, 2022).

And, given the nature of the injury to Eddy's ribs, it does not amount to a serious medical need sufficient to state a constitutional violation anyway. The injury to his ribs "healed without

medical intervention in less than two weeks," establishing nothing more than "*de minimis* injury." *See Tucker v. Holt*, No. 6:21-cv-00249, 2022 WL 3753952, at *7 (E.D. Tex. July 11, 2022), *report and recommendation adopted by*, 2022 WL 3718495, at *1 (E.D. Tex. Aug. 29, 2022); *see also Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (holding that "swollen wrists with some bleeding" does not constitute a serious medical need); *Scott v. Vital Core Strategies*, No. 1:21-cv-00189-HSO-BWR, 2023 WL 7955275, at *7 (S.D. Miss. July 18, 2023) (holding that a "temporary knee injury, accompanied by limited swelling, discomfort, and mobility issues, does not establish a serious medical need within the constitutional calculus"), *report and recommendation adopted by*, 2023 WL 7003274, at *10, 12 (S.D. Miss. Oct. 24, 2023); *Dotson v. Corr. Med. Servs.*, 584 F. Supp. 2d 1063, 1068 (W.D. Tenn. 2008) (holding that an ankle sprain with soft-tissue swelling and inability to bear weight did not rise to the level of a serious medical need).

*Third*, Eddy complains that he received no treatment for his back and shoulder pain while housed at JCADC. [49] at 15-16. Kiosk records indicate that Eddy complained about back and shoulder pain on March 8, 2022, at 3:08 p.m. [63-1] at 4. On March 13, 2022, at 7:46 a.m., Reynolds asked Eddy if he would like to incur the $10.00 charge to see a nurse. *Id*. Again, he failed to respond, and the request was closed four days later. *Id*.

Eddy's final claim fails for many of the same reasons that the first two are not constitutionally cognizable. The kiosk records disprove Eddy's claim that he was "ignored," *see Domino*, 239 F.3d at 756, and it appears that his back and shoulder pain were not sufficiently serious to prove an Eighth Amendment violation. Eddy was diagnosed with arthritis at Parchman and given various pain remedies, including "muscle relaxers, a muscle rub, and a bungee-like strap to work out with." [49] at 16. By the omnibus hearing, Eddy's shoulder "still [gave him]

problems," but he was no longer receiving treatment for the pain. *Id*. at 17. Insofar as his back and shoulder pain could have been "treat[ed] with over the counter at home remedies, as opposed to emergency or specialized medical care," it "does not rise to the level of a serious medical need." *Washington*, 2010 WL 1418590, at *4 (quotation omitted) (recommending dismissal of the plaintiff's Eighth Amendment claim based on neck and back pain); *see also Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992) ("Continuing back pain is unpleasant. Its existence does not, however, in and of itself demonstrate that a constitutional violation occurred.").

Thus, Eddy has not shown that either of these Defendants were deliberately indifferent to his serious medical needs. At best, he has "show[n] that the defendants may have acted negligently" by failing to follow up on his sick-call requests, but "actions which are merely inept, erroneous, or negligent do not satisfy the high standard of deliberate indifference." *Washington*, 2010 WL 1418590, at *4 (recommending dismissal of Eighth Amendment claim against prison official who "advised [the plaintiff] that he would be required to pay fifty dollars for any treatment he could receive at a hospital").

Finally, Eddy has failed to state a constitutional violation based on JCADC's requirement that he pay $10.00 per visit with healthcare providers. "Charging inmates for medical care does not violate the Eighth Amendment's prohibition against cruel and unusual punishment." *Id*. at *3. "[T]he deliberate indifference standard . . . does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society." *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (quotation omitted); *see also Farrakhan v. Johnson*, No. 1:08-cv-00438-TSE-JFA, 2009 WL 1360864, at *5 (E.D. Va. May 13, 2009) ("Inmates are not entitled to free medical care, and an inmate's

displeasure at having to pay [a] co-payment does not present a constitutional claim.").

Eddy broadly argues that "no inmate should be denied needed medical treatment because lack of ability to pay and should receive appropriate medical care based on their present need without regard to financial status." [10] at 3. But Eddy does not allege that he would have been denied medical care had he refused to pay the $10.00 charge for each visit. According to MDOC's ARP response: "If the inmate has no funds in their account, the sick call charge will be deducted from any future deposit. The inmate is seen by medical staff regardless of their ability to pay." [22-1] at 2. Eddy does not dispute the terms of this policy. *See* [49] at 21. He simply believes that he "should not be charged for medical purposes" at all and would prefer to "seek [a] legal remedy [instead]." [63-1] at 3.

But the law provides him no recourse on this point. "[C]harging inmates nominal fees for medical care when they are not denied medical care based on their inability to pay does not constitute deliberate indifference." *Adams v. Epps*, No. 3:10-cv-00531-TSL-MTP, 2012 WL 1314092, at *3 (S.D. Miss. Mar. 20, 2012), *report and recommendation adopted by*, 2012 WL 1326386, at *1 (S.D. Miss. Apr. 17, 2012); *see also Havens v. Central Miss. Corr. Facility*, No. 3:19-cv-00870-KHJ-LGI, 2021 WL 5277162, at *5 (S.D. Miss. Aug. 16, 2021), *report and recommendation adopted by*, 2021 WL 3913573, at *2 (S.D. Miss. Sept. 1, 2021). Inasmuch as Eddy was "not denied medical care based on [his] inability to pay," JCADC "charging [him] nominal fees for medical care . . . does not constitute deliberate indifference." *See Adams*, 2012 WL 1314092, at *3.

## IV.   CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered

them and determined that they would not alter the result. The Court finds that Eddy's claims should be dismissed with prejudice for his failure to establish a constitutional violation and without prejudice for failure to exhaust administrative remedies.

IT IS, THEREFORE, ORDERED AND ADJUDGED that Defendants' Motion [63] for Summary Judgment is **GRANTED**. Plaintiff Roy D. Eddy's claims are **DISMISSED WITH PREJUDICE** for failure to establish a constitutional violation. His claims are, alternatively, **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

IT IS, FURTHER, ORDERED AND ADJUDGED that this case is closed. A separate Final Judgment will be entered under Federal Rule of Civil Procedure 58.

SO ORDERED AND ADJUDGED, this 19th day of August, 2024.

/s/ *Robert P. Myers, Jr.*

ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE

18